Rotetn, Chief-Justice.
 

 Of the exceptions stated in the record, only one has been insisted on in this court. It is contended, that this paper cannot be sustained as a will, because it has an attestation clause, and is not attested; which is the exception taken in the Superior Court. In the discussion here, the proposition is amplified; and it is argued, that as the will professes to pass both realty and personalty, am! for want of atfes-
 
 *302
 
 taiion is inoperative as to the former, it cannot be good for any" purpose.
 

 Whether it was the testator’s intention that a paper, purporting to dispose of both real and personal estates, should operate as a disposition of one, unless it can take effect as to both, is a question of fact for the consideration of the jury.
 

 It is readily conceived that a strong intention of tbe testator may be inferred, that an unattested will should not operate at all unless it be available in every respect, or at least, as to both kinds of estate; as in provisions for different members of his family, in land for some, and personalty for others. B ut that is a question for the j u-
 
 ry,
 
 whether he intended the paper to operate as far as the law would allow it, in its present form ; or intended that unless the law would allow it in its present form, to be effectual in all its dispositions, it should not be in any. That consideration can however seldom, if ever, enter into the mind of a testator, who is bestowing his bounty on strangers,* for it cannot well be, that his inclination to serve one, is at all dependent upon his ability to serve another. And it seems impossible, that, where the same persons are the donees of both the real and the personal estate, and in the same proportions in each, that the testator can intend the legatees shall lose the legacies, because the law enables tbe heir to defeat the devises. But if it were not so, the intention is a question of fact; upon which consequently it is the province of the jury to pass. When the publication is proved, the effect is to make the paper a will for all purposes to which the law, in respect of the formality of its execution, will allow it to be a will. The question of intention respects the publication. Did tbe supposed testator publish, or intend to publish the particular paper for one purpose, if it could not bo effectual in all its provisions. There may be presumptions upon that point, from the state of the family, and the nature of the provisions; but they are but presumptions, and those of fact. For there is no such legal principle, as that a will professing to pass both kinds of estate, must be executed so as to do so, or it will pass neither. The contrary is seen in the common case of a will with one witness. As a presumption of fact, it stands only until it be repelled by express or other evidence of publication ; that is, that the testator executed the particular paper, or. adopted, or recognized
 
 *303
 
 it', in its actual state as finished, and to be finally his will without more doing to it on his part. ’When that is shown, the paper is a will of those parts of the estate, respecting which the evidence of publication then offered is competent to establish the publication of a will dispos-sing of them alone.
 

 The same may be said of the other part of the objection, as confined to the terms in which the exception in the Superior Court is taken. This, it may be remarked, applies as strongly to a will professing to pass only personal property, as to one purporting to dispose of both kinds. There is a presumption that a paper, which upon its face is imperfect, has not been published as a will, or was not intended by the maker of it to operate in the condition in which it is. This presumption will be more or less strong, according to the nature or degrees of the imperfections. If the paper be not signed, or if it he not finished, that is, not written out to express all the gifts the testator means to make, leaving, for instance, a part of his property undisposed of; or if another paper (tho’ imperfect also,) be written at the same time or afterwards, containing new and inconsistent dispositions, or tho party from time to time make alterations and additions without appointing executors or coming to a conclusion ; in such and many other cases which might be stated, the inference is, that he never published the particular paper or intended conclusively, in case of immediate death, his estate to be enjoyed according to it. The state of tho papers and the nature of tho provisions,may so well satisfy the mind that such was not the intention of the party, that tho conviction would not be removed by evidence that he spoke of making or having made a will, for lie may well be supposed to allude to a consistent, digested and finished instrument yet to be drawn up for execution from the others, as beads, memoranda and a general outline to be yet further altered or added to. A presumption certainly arises from other imperfections, as the want bf date or attestation
 
 ;
 
 and especially when the paper shows that it was once the party’s purpose to have jt attested. Tut this is manifestly weaker than tho oth-
 
 *304
 
 or presumptions, because the paper is not imperfect in the sense of not fully expressing the testator’s mind as to the final disposition of his whole estate, and being signed by him, imports that no alteration or addition was intended. The (Question in such acaso, is not about the
 
 animus testancli
 
 as in that paper ; but as to the
 
 animus feslandi by
 
 that paper; in other words it is reduced to the naked enquiry of publication, as it is technically called. Of a will of lands, publication must be proved by two witnesses, or by the circumstances specified in the act of 1784. But as to personalty, no particular mode is required by law. It may be shown by subscribing or other witnesses, who know the fact by the letters or separate memoranda of the
 
 deceased;
 
 or in any way which will satisfy
 
 the jury,
 
 that the paper was considered and intended
 
 by the
 
 parly in case of his death, then to pass his estate — the clause of attestation, if written by the party himself, shows that at one time he intended to avail himself of the security of subscribing witnesses. But suppose him afterwards to run his pen through that clause, would not that show a contrary intention to dispense with them, and rebut every inference against the publication; of itself it proves that the party has determined to dispense with subscribing witnesses, as the means of communicating to tiic world, after his death, the publication of his will. When the will is written by another person who inserts the attestation clause without direction,
 
 it
 
 can
 
 hardly
 
 be said that any inference can be drawn from it against the will; for then there is no reason to suppose the testator ever meant to call on a witness as the instrument of authentication. But whatever be thought from the party’s leaving that clause, un-obliterated, it can be at the utmost only a presumption, that be never published the paper, and is liable to be rebutted, as the Judge stated to the jury. The circumstances raising a contrary presumption, were, in this case, fully sufficient to authorise the Judge to leave them to the jury as evidence, if believed by them, to repel it. Here the testator gave directions for a full will, it was written and given to him as his will ; it purports to be
 
 *305
 
 perfect on its face anil to dispose of his whole estate and contains an appointment of executors ; it is afterwards signed by himself and’sealed up and deposited with another person, with directions to open it after his death. If all this were true, (which seems to be the real doubt,), there would seem to bo no ground for hesitation upon the question of publication, or the intention to give his estate by that very paper. The judgment therefore must be affirmed.
 

 Per Curiam_Judgment aeetrmed.